**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STEPHEN BUSHANSKY,<br><br>               Plaintiff,<br><br>v.<br><br>NIGHTSTAR THERAPEUTICS PLC, CHRIS HOLLOWOOD, DAVID FELLOWS, PAULA COBB, DAVID LUBNER, JAMES MCARTHUR, DAVID MOTT, and SCOTT WHITCUP,<br><br>               Defendants. | Civil Action No. 1:19-cv-10903<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.     This action is brought by Plaintiff against Nightstar Therapeutics plc ("Nightstar" or the "Company") and the members of Nightstar's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Nightstar will be acquired by Biogen Inc., through its subsidiary, Biogen Switzerland Holdings GmbH ("Bidder"), through Bidder's wholly owned subsidiary Tungsten Bidco Limited ("Bidco," and together with Biogen Inc. and Bidder, "Biogen") (the "Proposed Transaction").

2. On March 4, 2019, Nightstar and Biogen issued a joint press release announcing they had entered into an acquisition agreement dated March 4, 2019 (the "Implementation Agreement") to sell Nightstar to Biogen.  Under the terms of the Implementation Agreement, Biogen will acquire all of the outstanding Nightstar ordinary shares and American Depositary Shares ("ADS") in an all-cash transaction valued at $25.50 per share and ADS (the "Consideration").  The Proposed Transaction is valued at approximately $877 million.

3. On April 9, 2019, Nightstar filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Nightstar shareholders and ADS holders[1] vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Nightstar's financial projections, relied upon by Nightstar's financial advisor, Centerview Partners LLC ("Centerview"), in its financial analyses; (ii) the inputs and assumptions underlying Centerview's financial analyses; (iii) the background process leading to the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Nightstar shareholders and ADS holders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4. In short, unless remedied, Nightstar public shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the

---

[1] As set forth in the Proxy Statement, Nightstar ADS holders can direct the voting of the Nightstar shares represented by their Nightstar ADS or cancel their Nightstar ADS as to become a Nighstar shareholder.  *Id.* at 59-60.

shareholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.  This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Nightstar's corporate headquarters are located in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8.  Plaintiff is, and has been at all times relevant hereto, a continuous holder of Nightstar ADSs.

9.  Defendant Nightstar is incorporated in England and Wales, with its principal executive offices located at 10 Midford Place, 2nd Floor, London, United Kingdom and its corporate headquarters located at 203 Crescent Street, Waltham, Massachusetts 02453. The

Company is a leading clinical-stage gene therapy company focused on developing and commercializing novel one-time treatments for patients suffering from rare inherited retinal diseases. Nightstar's ADSs trade on the Nasdaq Global Select Market under the ticker symbol "NITE."

10. Defendant Chris Hollowood ("Hollowood") has been a director of the Company and Chairman of the Board since November 2013.

11. Defendant David Fellows ("Fellows") has been Chief Executive Officer ("CEO") and a director of the Company since January 2015, and previously served as a non-executive director from February 2014 to January 2015.

12. Defendant Paula Cobb ("Cobb") has been a director of the Company since September 2018.

13. Defendant David Lubner ("Lubner") has been a director of the Company since July 2017.

14. Defendant James McArthur ("McArthur") has been a director of the Company since November 2016.

15. Defendant David Mott ("Mott") has been a director of the Company since August 2015.

16. Defendant Scott Whitcup ("Whitcup") has been a director of the Company since June 2017.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. Biogen Inc. is a Delaware corporation and maintains its principal executive offices at 225 Binney Street, Cambridge, Massachusetts 02142. Biogen Inc. is a global biopharmaceutical company focused on discovering, developing and delivering innovative therapies for people living with neurological conditions and neurodegenerative diseases. Biogen Inc. is the ultimate parent company of Bidder. Biogen Inc. trades on the Nasdaq Global Select Market under the ticker symbol "BIIB."

19. Bidder is a limited liability company incorporated in Switzerland. Bidder maintains its registered office at Neuhofstrasse 30, 6340 Baar, Switzerland.

20. Bidco is a newly-incorporated English private limited company and a direct wholly-owned subsidiary of Bidder.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21. Nightstar is a leading clinical-stage gene therapy company focused on developing and commercializing novel one-time treatments for patients suffering from rare inherited retinal diseases that would otherwise progress to blindness. Nightstar was originally incorporated in England and Wales on July 6, 2017 under the name of Nightstar Therapeutics Limited. On September 15, 2017, after the completion of a two-step corporate reorganization, Nightstar Therapeutics Limited re-registered as a public limited company and changed its name to Nightstar Therapeutics plc.

22. On October 2, 2018, Nightstar announced the closing of its underwritten public offering of 4.6 million ADSs, which included the exercise in full by the underwriters of their option to purchase up to an additional 600,000 ADSs. The aggregate gross proceeds to Nightstar from the offering were $82.8 million.

23.     Nightstar's lead product candidate, NSR-REP1, is in Phase 3 clinical development for the treatment of choroideremia ("CHM").  According to the Company, NSR-REP1 represents the most clinically advanced product candidate for this indication worldwide, potentially providing Nightstar with a significant industry first-mover advantage.  NSR-REP1 received orphan drug designation for the treatment of CHM from the U.S. Food and Drug Administration ("FDA") and European Medicines Agency ("EMA").  NSR-REP1 also received its Regenerative Medicine Advanced Therapy designation by the FDA.

24.     Nightstar's second product candidate is NSR-RPGR.  NSR-RPGR is in Phase 2/3 clinical development for the treatment of X-linked retinitis pigmentosa ("XLRP"), in a clinical trial known as XIRIUS.  On September 22, 2018, Nightstar announced positive preliminary safety and efficacy data from Phase 1 dose escalation study in XIRIUS.  The data provided a basis for an early clinical proof of concept allowing the XIRIUS trial to progress to the Phase 2/3 expansion study.  NSR-RPGR received orphan drug designation from the FDA and EMA for the treatment of XLRP and received Fast Track designation from the FDA.  On November 13, 2018, Nightstar issued a press release announcing its planned initiation of Phase 2/3 expansion study in XIRIUS trial for NSR-RPGR in XLP and reported its third quarter 2018 financial results ("3Q 2018 Press Release").  With respect to the planned initiation of Phase 2/3 expansion study, the 3Q 2018 Press Release stated:

> We are pleased with the upcoming initiation of the Phase 2/3 expansion study in line with our previous guidance after being the first sponsor to establish proof-of-concept in X-linked retinitis pigmentosa," said Dave Fellows, Chief Executive Officer. "The modified Phase 2/3 expansion study is designed to be consistent with recommendations in FDA's draft guidance on the development of gene therapy products for retinal disorders, which we believe will allow us to expedite the development of NSR-RPGR.
>
> XIRIUS is a clinical trial consisting of an open-label, dose escalation study followed by an expansion study. Enrollment of the Phase 1 dose escalation study in the XIRIUS trial was completed in August 2018, consisting of six cohorts of three patients each for a total of 18 adult patients. On September 22, 2018, Nightstar

announced positive preliminary safety and efficacy data from the XIRIUS trial for the first five cohorts (combined n=15) of the dose escalation study at the EURETINA medical meeting. Six-month follow-up data on all 18 patients in the dose escalation study is expected to be available in the second quarter of 2019, with one-year follow-up data expected to be available in the fourth quarter of 2019.

The Phase 2/3 expansion study is designed to evaluate the safety and efficacy of NSR-RPGR in patients with a diagnosis of XLRP due to RPGR mutations, as confirmed by genetic testing. The primary efficacy endpoint will evaluate changes in retinal sensitivity following treatment with NSR-RPGR. Secondary endpoints include both anatomical and functional endpoints of efficacy and safety similar to those evaluated in the dose escalation study as well as exploratory efficacy endpoints such as mobility maze assessments.  Approximately 45 patients across six surgical centers in both the United States and the United Kingdom will be enrolled. The eligibility criteria for the expansion study will include patients with functional impairment as measured by microperimetry and the presence of viable photoreceptors as indicated by ellipsoid zone measurements on optical coherence tomography. Patients will be randomized on a masked basis into one of three study arms: approximately 15 patients receiving a high-dose of NSR-RPGR in one-eye ($2.5 \times 10^{11}$ genome particles, or gp); approximately 15 patients receiving a low-dose of NSR-RPGR in one-eye ($5 \times 10^{10}$ gp); and approximately 15 patients receiving no treatment (no-sham, parallel control arm). The two treatment groups correspond to doses used in cohorts 5 and 3 of the dose escalation study, respectively. A standardized eight-week steroid regimen will be included to maximize any potential treatment benefit. The Phase 2/3 expansion study is expected to begin by the end of 2018. Preliminary efficacy data is expected to be available in mid-2019, which would serve as the basis for discussions with regulatory agencies on potential Phase 3 requirements. One-year follow-up data from the expansion study is expected to be available in 2020.

Additionally, according to the 3Q 2018 Press Release, for the quarter, Nightstar cut its net losses by $709,000, compared to the third quarter in 2017.

**The Sale Process**

25.    On June 28, 2018, a party referred to in the Proxy Statement as "Company A" expressed to defendant Fellows Company A's interest in Nightstar's product candidate for CHM. Company A later expressed its interest in a portfolio of Nightstar's product candidates, including NSR-RPGR, NSR-REP1 and NSR-ABCA4.

26.    On July 30, 2018, Senthil Sundaram, Nightstar's Chief Financial Officer, had a

discussion with Daniel Karp, Biogen's Executive Vice President, Corporate Development, regarding the two companies' interests in the field of gene therapy.

27.     On August 24, 2018, defendant Mott met with a representative of a party referred to in the Proxy Statement as "Company B." The Company B representative expressed an interest in the Company's portfolio of product candidates.

28.     On September 22, 2018, Nightstar publicly announced preliminary safety and efficacy results from the Phase 1 dose escalation study in the XIRIUS trial for NSR-RPGR, which provided the basis for an early clinical proof of concept to progress to the Phase 2/3 expansion study in the XIRIUS trial.

29.     From September through December 2018, Nightstar representatives held meetings with each of Company A, Company B and a party referred to in the Proxy Statement as "Company C" regarding each counterparty's interest in a potential transaction with the Company.

30.     On November 15, 2018, defendant Fellows met with a Company A representative to discuss the key assumptions Company A was using to develop its valuation forecast of Nightstar's product candidates.

31.     On December 5, 2018, Company A informed defendant Fellows it was in the process of finalizing its valuation assumptions and should be submitted a proposal within the following two weeks.

32.     On December 12, 2018, Company B submitted a proposal to acquire the Company at a price of $20.50 per share in cash.

33.     Throughout January 2019, Company representatives held meetings with each of Biogen, Company A, Company B, and Company C.

34.     On January 30, 2019, Nightstar received a proposal from Biogen outlining an

acquisition of the Company for $19.00-$21.00 per share in cash.

35. On February 4 and 5, 2019, respectively, each of Company A and Company B expressed an interest in potentially pursuing a strategic partnership with Nightstar.

36. On February 9, 2019, defendant Fellows and a Company A representative discussed potential terms of a possible strategic collaboration. On February 18 and 19, 2019, defendant Fellows and a Company A representative discussed a revised set of terms for a potential strategic collaboration.

37. On March 1, 2019, the Company received a proposal from Biogen outlining an acquisition of the Company for $25.00 per share in cash. Over the next few days, the parties and their advisors negotiated the terms of the Implementation Agreement.

38. On March 2, 2019, Nightstar received a revised proposal from Biogen for $25.50 per share in cash.

39. At a March 3, 2019 special Board meeting, Centerview rendered its fairness opinion on Biogen's revised proposal. The Board then approved the Implementation Agreement. The next day, Nightstar, Bidder and Bidco executed the Implementation Agreement.

**The Proposed Transaction**

40. On March 4, 2019, Nightstar and Biogen issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> WALTHAM, Mass. and LONDON, March 04, 2019 (GLOBE NEWSWIRE) -- Nightstar Therapeutics plc ("Nightstar") (NASDAQ: NITE), a clinical-stage gene therapy company developing treatments for rare inherited retinal diseases and Biogen Inc. ("Biogen") are pleased to announce that they have reached agreement on the terms of a recommended acquisition whereby the entire issued and to be issued share capital of Nightstar will be acquired by Tungsten Bidco Limited (a newly-incorporated company and wholly-owned subsidiary of Biogen Switzerland Holdings GmbH ("Bidder")). It is intended that the Acquisition will be implemented by means of a U.K. Court-sanctioned scheme of arrangement under Part 26 of the U.K. Companies Act 2006.

Under the terms of the Acquisition, Nightstar Shareholders will be entitled to receive USD 25.50 in cash for each Nightstar Share. The terms of the Acquisition values Nightstar's entire issued and to be issued share capital at approximately USD 877 million and the terms of the Acquisition represent a premium of approximately 70 per cent. to the 30 trading day volume-weighted average price per Nightstar ADR of USD 15.02 for the period from 17 January 2019 to 1 March 2019 (being the last practicable date prior to the date of this Announcement).

Commenting on the Acquisition, David Fellows, Chief Executive Officer of Nightstar, said:

"Our agreement with Biogen will give us the platform and resources to expand our mission to maintain and restore sight in patients with inherited retinal diseases. This transaction accelerates treatment to patients through Nightstar's key retinal gene therapy programs that modify or halt progression of blindness. Together, with Biogen's expertise in rare diseases, worldwide reach and extensive resources, we will dramatically improve the lives of patients around the world who currently have no treatment options. We are proud of what Nightstar has accomplished, and we thank our team for their tireless work to improve the lives of our patients and their families."

Commenting on the Acquisition, Chris Hollowood, Chairman of Nightstar, said:

"Over the last six years since foundation in 2013, Nightstar has established itself as one of the global leaders in retinal gene therapies. I am proud of Nightstar's achievements, delivering two proof-of-concept programs and building a world class organisation. We look forward to seeing the next chapter of Nightstar's journey under Biogen's ownership, as it works to achieve its ultimate ambition of delivering transformational treatments to patients."

**The Proxy Statement Contains Material Misstatements and Omissions**

41.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Nightstar's shareholders and ADS holders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

42.     Specifically, as set forth below, the Proxy Statement fails to provide Company shareholders with material information or provides them with materially misleading information concerning: (i) Nightstar's financial projections, relied upon by Nightstar's financial advisor,

Centerview, in its financial analyses; (ii) the inputs and assumptions underlying Centerview's financial analyses; (iii) the background process leading to the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest.  Accordingly, Nightstar shareholders are being asked to vote in favor of the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Nightstar's Financial Projections*

43.     The Proxy Statement omits material information relating to the Company's financial projections provided by Nightstar management and relied upon by Centerview for its analyses.

44.     For example, the Proxy Statement sets forth:

> The Forecasts were based on certain internal assumptions about the probability of success and regulatory approval, launch timing, pricing, market growth, market share, competition and other relevant factors relating to the commercialisation of Nightstar's product candidates. Nightstar's management considered it appropriate to prepare forecasts presenting three scenarios to reflect varying commercial assumptions and probability of success with respect to Nightstar's lead clinical product candidates.

Proxy Statement at 30.  Yet the Proxy Statement fails to disclose for each of the Company's three sets of forecasts, defined in the Proxy Statement as "Case A," "Case B" and "Case C": (i) quantification of, as well as the assumptions underlying, the probability of success with respect to Nightstar's lead clinical product candidates; and (ii) certain internal assumptions about regulatory approval, launch timing, pricing, market growth, market share, competition and other relevant factors relating to the commercialization of Nightstar's product candidates.

45.     Moreover, the Proxy Statement fails to disclose, for each of the Company's Case A, Case B and Case C projections, the forecasted tax savings from usage of net operating losses

and future losses over the projection period, utilized by Centerview in its *Discounted Cash Flow Analysis*.

46. The omission of this information renders the statements in the "Certain Forecasts" and "Opinion of Nightstar's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's Financial Analyses***

47. The Proxy Statement also describes Centerview's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Nightstar's public shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Nightstar's shareholders.

48. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 12.5% to 15.0%; and (ii) the forecasted tax savings from usage of net operating losses and future losses for each of the Case A, Case B and Case C forecasts, utilized by Centerview in its analysis.

49. The omission of this information renders the statements in the "Opinion of Nightstar's Financial Advisor" and "Certain Forecasts" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

50. The Proxy Statement fails to disclose material information concerning the sale process leading up to the Proposed Transaction.

51. Specifically, the Proxy Statement fails to disclose any of the terms of the potential strategic partnerships that the Company discussed with Company A on February 9, 2019 or the revised terms discussed with Company A on February 18 and 19, 2019. Nightstar shareholders must be provided with this material information in order to properly evaluate the competing level of interest that was submitted to Nightstar against the Proposed Transaction.

52. Additionally, the Proxy Statement sets forth that in evaluating the Implementation Agreement and the Proposed Transaction the Board considered numerous reasons, including the following material reason and benefits of the Proposed Transaction:

- the belief of the Nightstar Board that the approximately USD 8.8 million compensatory payment, representing 1 per cent. of the equity value of Nightstar based on the consideration of USD 25.50 per share, and the requirement that a superior proposal (for purposes of the Implementation Agreement) include a price per Nightstar Share that is more than 7.5 per cent. above the Consideration, would not unreasonably deter another party with the strategic interest and financial capability from making a competing proposal for Nightstar.

*Id.* at 41-42.

53. The Proxy Statement fails, however, to disclose the negotiations concerning the requirement that a superior proposal include a price per Nightstar share that is more than 7.5 per cent above the Consideration, including who proposed this requirement, when it was proposed during the negotiations and whether the Board attempted to decrease the percentage requirement above the Consideration.

54. The omission of this information renders the statements in the "Background to the Recommendation" and "Reasons for the Recommendation" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

55. Further, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Nightstar insiders.

56. The Proxy Statement fails to disclose whether any of Nightstar's executive officers or directors is continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between Biogen and Nightstar's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Nightstar's prior proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

57. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

58. The omission of this information renders the statements in the "Background to the Recommendation" and "Interests of Nightstar Non-Employee Directors and Executive Officers" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

59. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior

to the shareholder vote on the Proposed Transaction, Plaintiff and the other shareholders and ADS holders will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

60. Plaintiff repeats all previous allegations as if set forth in full.

61. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

62. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about (i) Nightstar's financial projections, relied upon by Nightstar's financial advisor, Centerview, in its financial analyses; (ii) the inputs and assumptions underlying Centerview's financial analyses; (iii) the background process leading to the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

63. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

64. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

65. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

66. Plaintiff repeats all previous allegations as if set forth in full.

67. The Individual Defendants acted as controlling persons of Nightstar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Nightstar, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

68. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

70. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

71. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

72. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Nightstar shareholders and ADS holders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Nightstar shareholders and ADS holders;

  B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

  C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 23, 2019

               /s/ *Shannon L. Hopkins*
               Shannon L. Hopkins (BBO# 657485)
               LEVI & KORSINSKY LLP
               1111 Summer Street, Suite 403
               Stamford, CT 06905
               Tel: (203) 992-4523
               Fax: (212) 363-7171
               shopkins@zlk.com

               *Attorneys for Plaintiff*

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010